**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:                                          Chapter 11

**BROOKLYN PARK SLOPE FITNESS LLC**       Case No.: 23-41129 (ESS)
**DBA RETRO FITNESS OF PARK SLOPE,**

                              Debtor.
-------------------------------------------------------------X

### MOTION (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT AND (II) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE

Brooklyn Park Slope Fitness LLC dba Retro Fitness of Park Slope ("Debtor"), submits this motion ("Motion") for an order (i) approving the Debtor's proposed form of adequate assurance of post-petition payment to the Utility Companies (as defined herein) and (ii) prohibiting the Utility Companies from altering, refusing or discontinuing service to, or discriminating against, the Debtor solely on the basis of the commencement of this Chapter 11 case. In support of the Motion, the Debtor respectfully represents as follows:

### BACKGROUND

1.      On March 31, 2023 ("Petition Date"), the Debtor commenced its Chapter 11 case ("Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.    The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this motion, no trustee, examiner or committee has been requested or appointed.

3.    The Debtor operates a gym located at 25 12th Street, Brooklyn, New York in a shopping center commonly known as the Hamilton Plaza Shopping Center.  The Debtor filed for chapter 11 protection because of, among other things, (i) financial distress caused by the continuing impact of the COVID-19 impact, which negatively impacted fitness facilities, (ii) a dispute with Small Business Administration in connection with an EIDL loan which was purportedly accelerated based on a change in ownership of the Debtor, a matter vigorously disputed by the Debtor and (iii) a long-standing dispute with the Debtor's landlord regarding the landlord improperly diminishing the parking spaces available for the Debtor and its patrons/members.

4.    A description of the background of this case is also set forth in the Declaration of Fidelia Perez Pursuant to Local Rule 1007-4 filed as ECF Doc. 2.

## RELIEF REQUESTED

5.    In connection with the operation of their business, the Debtor obtains gas and electricity and similar utility services (collectively, "Utility Services") from individual utility companies as that term is used in Section 366 of the Bankruptcy Code and are listed on **Exhibit A** annexed hereto ("Utility Companies").

6.    On average, before the Petition Date, the Debtor spent approximately $4,650.00 per month for Utility Services.  Currently, Con Edison holds a deposit of

approximately $7,285.00.

7.    Uninterrupted Utility Services are essential to the Debtor's business operations and delivery of services to the Debtor's gym members. Should either Utility Company alter, refuse or discontinue service, even for a brief period, the Debtor's business will be disrupted as the Debtor would be unable to deliver services to its members. Thus, the Debtor intends to pay all undisputed post-petition obligations owed to the Utility Companies in a timely manner and to provide adequate assurance of future performance consistent with the mandate of Section 366 by proposing to pay a deposit equal to a 14-day average based on previous usage ("Utility Deposit").   The Debtor submits that it has sufficient funds to pay the Utility Deposit, to the extent requested.

10.    The Debtor submits that the Utility Deposit constitutes adequate assurance to the Utility Companies ("Proposed Adequate Assurance"). Accordingly, upon entry of the Debtor's proposed Order, any Utility Company that fails to file an objection to this Motion and the Proposed Adequate Assurance offered by the Debtor shall be deemed to have consented to the Proposed Adequate Assurance as required by section 366 of the Bankruptcy Code and shall be prohibited from altering, refusing or discontinuing Utility Services, including as a result of unpaid prepetition charges. In addition, such Utility Company will further be deemed to have waived any right to seek additional adequate assurance during the Debtor's Chapter 11 Case, except as provided in section 366(c)(3) of the Bankruptcy Code.

3

## LEGAL BASIS FOR RELIEF

13.    Section 366(c) of the Bankruptcy Code defines "assurance of payment" to mean certain specified forms of security, without abrogating the Court's power to determine what specific amount is necessary to provide adequate assurance of payment to a utility company. *See In re The Great Atl. & Pac. Tea Co., Inc.*, 2011 WL 5546954, at *4 (S.D.N.Y. Nov. 14, 2011).

14.    For the reasons set forth below, the Utility Companies will be adequately assured of payment for future services by the relief requested herein. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors would pay for post-petition services. *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for 30 days after a chapter 11 filing. At the same time, section 366 protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

15.    Amendments to the Bankruptcy Code did not abolish the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must be "adequate." Thus, while section 366(c) of the Bankruptcy Code limits the factors a court may consider

4

when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance. Section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had. Compare 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") with 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

16.    In addition, section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). This principle may apply in cases where the debtor has made prepetition deposits or prepayments for services that utility providers ultimately will render post-petition. *See* 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, courts may exercise their discretion in determining the adequacy of assurance payments and

even whether such payments are necessary.

17.     Finally, section 366(c) only requires that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute a guarantee of a debtor's ability to pay. *See*, *e.g.*, *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . 'a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of nonpayment for post-petition services.'") (quoting *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co., v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

18.     Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were unnecessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Company for a guarantee of payment should be refused when the Debtor's specific

circumstances already afford adequate assurance of payment.

19.     The Debtor is current on its obligations to the Utility Companies, with Con Ed already holding a deposit, thus, the Debtor respectfully submits that the Proposed Adequate Assurance is more than sufficient to assure the Utility Companies of future payment.

## IMMEDIATE RELIEF AND WAIVER OF STAY IS NECESSARY TO AVOID IRREPARABLE HARM

20.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm," which as noted above, is the impetus for this Motion. Absent approval of the Motion, Utility Companies could discontinue service, without warning, twenty (20) days from the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment. Any Utility Company that fails to object to this Motion shall be deemed to consent to the Proposed Adequate Assurance and shall be bound by the Proposed Order. *See In re Syroco, Inc.*, 374 B.R. 60, 62 (Bankr. D.P.R. Aug. 22, 2007) (a utility provider's lack of objection, response, or counter-demand after receiving notice of hearing on a utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code). Accordingly, the relief sought should go into effect immediately to avoid immediate and irreparable harm to the Debtor and its estate.

21.     Consistent with Bankruptcy Rule 6003, the Debtor also requests that the Court waive any stay imposed by Bankruptcy Rule 6004(h), to the extent the

same may be deemed applicable, which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons set forth herein, the waiver of the stay is necessary for the Debtor to operate its business without interruption and to preserve asset values for creditors.

**NOTICE**

22.    Notice of this Motion has or will be given to: (i) the Office of the United States Trustee; (ii) each Utility Company, (iii) Debtor's list of twenty (20) largest unsecured creditors, to the extent known, and (iv) any such other party entitled to notice pursuant to Bankruptcy Rule 2002.

23.    The Debtor is serving this Motion to be heard on May 2, 2023 at 3:00 p.m.  To the extent an objection is filed to the Motion that cannot be resolved by the hearing date, the Debtor reserves the right to submit a bridge order extending the time during which the Utility Companies are prohibited from discontinuing utility services and otherwise reserving all parties' rights under section 366 of the Bankruptcy Code until a hearing can be scheduled to resolve such objection.

**NO PRIOR REQUEST**

24.    No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto, granting the relief requested in the Motion

8

and such other and further relief as may be just and proper.

**Dated:**    New York, New York
          April 10, 2023

                              **LEECH TISHMAN
                              ROBINSON BROG, PLLC**
                              875 Third Avenue, 9th Floor
                              New York, New York 0022
                              Tel. No.: 212-603-6300
                              *Proposed Counsel for the Debtor*


                              By:/s/ Fred B. Ringel
                              _____
                                  **Fred B. Ringel, Esq.**

## Exhibit A

Utility Companies

| UTILITY COMPANY | ACCOUNT NO. | SERVICE | ADDRESS |
|---|---|---|---|
| Con Edison | 61-1407-0001-0000-6 | Electric | BANKRUPTCY GROUP 4 Irving Place, ROOM 1875-S NEW YORK, NY 10003 |
| National Grid | 02027-78380 | Gas | National Grid PO Box 371416 Pittsburgh, PA 15250-7416 |